## McDONALD et al. v. Thompson et al.

1. Equity Practice — Verdict of Jury Not Binding on Chancellor.— The verdict of a jury on a feigned issue out of chancery is not binding on the chancellor, and he may disregard it, and decide the cause according to his own judgment.
2. Lost Deed — Proof Necessary to Establish.— In view of the rule that the record title to land ought not to be set aside on the assumption of a lost deed, except upon clear proof of its execution, existence, and enough of its contents to enable the court to determine the character of the instrument, an action to restore an alleged lost deed to a homestead cannot be sustained, where the evidence failed to show its date, manner of execution, nor a definite description of the property conveyed thereby, and it not appearing that the alleged grantee, in her life-time, ever claimed title to the homestead, and her occupancy of the premises being consistent with her relations to the alleged grantors.

*Error to District Court of Arapahoe County.*

Messrs. Browne & Putnam, for plaintiffs in error.

Messrs. Perry & Carpenter, for defendants in error.

Richmond, C.  This action was brought on a complaint in the nature of a bill in equity to restore a lost deed. Plaintiffs in error and complainants below allege that they are the heirs at law of one Mary A. Thompson, and inter-

ested as heirs at law in the estate of said Mary A. Thompson, who died intestate. That Emma G. Speed, daughter of said Thompson, did by her deed of conveyance transfer all her interest in the real estate of said Thompson to said Sarah E. McDonald. That on the 18th day of February, 1875, Salathiel Thompson, father of the plaintiffs and defendants, except William C. Clows, executed and delivered to the defendants a mortgage on the north one-half of the undivided one-half of the center one-third of lot No. 11, in block No. 2, in the west division of the city of Denver, to secure the payment of his promissory note. Said note being unpaid, defendants filed a bill in chancery in the county court of Arapahoe county to foreclose said mortgage. That on the 21st day of March, A. D. 1876, a decree was entered of record in said cause in said court against Salathiel Thompson for the sum of $1,508.08 and costs, and for the sale of said property. That the special master in chancery made sale of said property on the 4th day of May for the sum of $1,545.80 to the defendants, and by his deed of the 7th of February, 1877, the master conveyed to defendants the said premises. That some time after the date of the master's deed, about the latter part of the year 1879, the defendants conveyed for a valuable consideration the property above described to Mary Ann Thompson, and delivered the deed of conveyance to her, but that she failed to record the same. That said Mary Ann Thompson remained in possession of the premises for two years after date of deed, continuing to collect the rents up to the time of her death, December 7, 1885. That at the time of her death she had possession of the property and of the deed of conveyance, and that said deed was deposited with Mary C. Cullen for safe-keeping, and has been, with other valuable papers, abstracted and carried away without her knowledge and consent, and is either lost or destroyed. That after the abstraction of said deed the defendants pretended to be the owners of said premises in fee, and are and have been exercising acts of ownership over the same, and refuse to

supply said lost deed, and thereby establish title to said premises in the estate of said Mary Ann Thompson.

To the complaint defendants answer, denying that they ever made a deed of conveyance, or ever in any manner conveyed the property described in the complaint, or any part thereof, to said Mary Ann Thompson; or that at the time of her death, or at any time, she ever had any such deed of conveyance; or that such deed was ever deposited with Mary C. Cullen or any other person; or that said deed has been abstracted, carried away or destroyed. They admit that said Mary Ann Thompson, with her husband, Salathiel Thompson, resided in and upon the premises mentioned in the complaint, and enjoyed the use thereof during their life-time, together with the rents and profits thereof; but aver that this occupation and enjoyment of the rents and profits of the premises was by consent of the defendants in consideration of love and affection which they bore to them as their parents. From the foregoing it will be seen that the issue in the court below was whether or not the defendants had ever executed a deed of conveyance of the premises to Mary Ann Thompson. The cause was tried to the court in the first instance, and, at the time being unable to reach a conclusion, the court directed the trial of the issue to a jury, to whom was submitted the following questions: "*First.* State whether, on December 7, 1885, there was in existence a deed conveying in fee all the north one-third of lot No. 11 in block No. 2 in the west division of the city of Denver, in Arapahoe county, Colorado, from William N. Thompson and George A. Thompson to Mary Ann Thompson. *Second.* If such a deed was in existence, state whether it has been delivered by the grantors to the grantee, Mary Ann Thompson."

The jury answered both of these questions in the affirmative. The court thereupon, notwithstanding the verdict, entered judgment in favor of the defendants, and dismissed the complaint. To reverse this action of the court this writ of error is prosecuted. The errors assigned are that

the court erred in setting aside the verdict and dismissing the complaint; that the finding of the court is contrary to the evidence and contrary to the law.

Plaintiffs in error urge: *First*, that the findings of the jury on the issues of fact were binding on the judge; *second*, that the evidence was sufficient to entitle them to a decree. Upon the first proposition we are inclined to think that the law in this state is well established.

In *Abbott v. Monti*, 3 Colo. 562, it is said: "Whether the chancellor shall direct, or refuse an issue rests wholly in his discretion, and we fail to discover any valid reason why it should not so rest. If an issue be directed, the verdict of the jury thereon is not binding upon the chancellor's conscience. He is not only at liberty to disregard it, but it is his duty to decide the cause according to the dictates of his own judgment, and the convictions of his own conscience. In an action at law, the verdict of the jury is of higher and more solemn import. It is the foundation upon which the judgment of the court must rest.

"In a suit in equity, the verdict is not necessarily the foundation of the decree. It is merely incidental, and may be, and, if the chancellor's conscience is not satisfied with it, must be, wholly unheeded."

The same doctrine is laid down in *McGan v. O'Neil*, 5 Colo. 58; *Hall v. Linn*, 8 Colo. 264; *Kirtley v. Mining Co.*, id. 279; *Tabor v. Sullivan*, 12 Colo. 136.

Accepting, then, the doctrine in this state to be that the verdict of the jury in such a case is not binding upon the chancellor, the sole question remaining for consideration is: "Was the evidence sufficient to warrant a decree as prayed for by the complainants, or was it insufficient, and the court therefore warranted in dismissing the complaint, and rendering judgment accordingly, notwithstanding the findings of the jury?" We think it may be said that if the court had accepted the verdict of the jury, and entered judgment in accordance with such verdict, we should not have disturbed such judgment; but it does not follow

from this that the judgment as rendered ought to be disturbed.

There is some conflict in the testimony of the witnesses on behalf of the plaintiffs and defendants. The two defendants positively swear that they never executed the deed to the property, as claimed by the plaintiffs; and, in opposition to this positive assertion of the two defendants, the testimony on the part of the plaintiffs' witnesses is not very definite and certain.

The testimony of Mary C. Cullen is to the effect that she received several deeds with other papers from her sister, Mrs. Speed, and was told that they pertained to the estate of Mary Ann Thompson. She never examined the deeds or compared them with the numbers of the lots; did not know what lots they had reference to, and did not know even the number of the home place, but that she noticed that the deeds were signed by William and George,— recognized the handwriting. In her cross-examination she says: "I saw the deed from defendants to mother among the papers left in my charge by Mrs. Speed. Can't remember how many deeds there were. Know they were deeds with brothers' names to them, because I recognized the handwriting. Do not remember the notary; but know it was a deed by the shape it was in. Do not remember if the face of the deed was blank like Exhibit A. All I do remember is their names inside, both together,— down here somewhere."

Mrs. Speed claims that she saw the deed purporting to convey the property to her mother. She does not give the language of the deed, or its date, or its manner of execution, but in an indefinite way testifies positively that she saw the deed to this property. Her testimony, however, was by deposition, and that of the other witnesses was before the court.

There is no reason given why this deed, if in existence, was not placed upon the record in the life-time of Salathiel Thompson or Mary Ann Thompson. There is no conversation detailed by any of the witnesses on the part of the

plaintiffs which indicates that Mary Ann Thompson ever claimed the property as her individual property. The occupation and possession of the property with the enjoyment of the rents during the life-time of the father and mother are certainly consistent with the declarations of the defendants in their answer and in their testimony. The rule as laid down in such cases is that "a title to land duly authenticated by written evidence ought not to be set aside on the assumption of a previous lost conveyance, except upon clear proof by the claimant of the execution and existence of the supposed deed, and so much of its contents as will enable the court to determine the character of the instrument." *Metcalf v. Van Benthuysen*, 3 N. Y. 424; *Edwards v. Noyes*, 65 N. Y. 125.

Under this rule we can readily see how the chancellor trying the cause, having before him the witnesses and the depositions, and twice having heard all the testimony, could readily say that the existence of the alleged lost instrument, notwithstanding the finding of the jury, was not sufficiently established by the testimony. The defendants' testimony, excepting so far as it conflicts with that of Mrs. Speed and Mrs. Cullen, stands entirely unimpeached. They positively swear that they never executed the instrument, and never intended in any manner or form to part with the title; and in reality, there seems to have been no necessity for their doing so, inasmuch as they, in consideration of the relation of parents and sons, permitted the father and mother to enjoy during their life-time the possession and rents and profits of the property. This, coupled with the failure to record the deed, and the inability of any of the witnesses who are interested in establishing the existence of the deed to satisfactorily prove that they had ever examined the deed to ascertain whether or not it contained an accurate description of the premises, and the additional failure of Mrs. Cullen to deliver the deed of the property to the administrator, and the fact that there were several deeds in existence pertaining to the estate, and one in par-

ticular relative to mining property in Boulder county, which had been executed by one of the defendants, renders it a matter of extreme doubt as to whether any such deed as is described in the complaint was ever in existence, and, in our judgment, was sufficient to create in the mind of the chancellor a well-founded belief that such a deed had never been executed and delivered. Accepting the doctrine that the chancellor must act upon the convictions of his own judgment and conscience, and that it is his province ultimately, in cases of this kind, to find the facts, pass upon the weight of the evidence and the credibility of the witnesses, we feel convinced that this court would not be warranted in disturbing the action of the court below. The judgment should be affirmed.

REED and BISSELL, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*