236 P.2d 34

**WILSON et ux. v. METHENY et ux.**

No. 5221.

Supreme Court of Arizona.

Sept. 24, 1951.

340

Carl Tenney, of Phoenix, for appellants.

Shute & Elsing, of Phoenix, for appellees.

## PER CURIAM.

This is an appeal from a judgment entered in favor of appellees on appellants' cross-complaint, and from an order denying appellants' motion for a new trial.

The facts are that appellees were on February 21, 1947, and prior thereto, the owners of: The South Half of the Southeast Quarter of the Southwest Quarter of the Northwest Quarter of Section Fourteen, Township One North, Range Three East of the Gila and Salt River Base and Meridian; except therefrom the North 50 feet of the East 180 feet.

For several years prior to that date, appellants (Wilsons) had been renting said premises from appellees (Methenys) at a monthly rental ranging from $17.50 to $25 per month. The rental agreement was at first on a month to month basis and later on a yearly basis with the rents payable monthly.

On February 21, 1947, appellants and appellees entered into a verbal agreement whereby appellants leased the above described premises from appellees for a period of one year beginning March 1, 1947, and ending March 1, 1948. There was also included in this agreement an option to purchase the premises from appellees provided the option was exercised by appellants at any time within the year. The purchase price of the property was fixed at $5,000 and the rental at $300 per annum which, in the event of purchase was to be applied upon the purchase price, leaving a balance

of $4,700 due to appellees from appellants. This agreement was reduced to writing on the following day and signed by Elves W. Metheny (husband) and the appellants. Ruth Metheny (wife) did not sign the written agreement although according to appellants' testimony she was present at the time the verbal agreement was entered into and actively participated in the negotiations leading up to the agreement. She personally suggested the inclusion of the option to purchase in the written lease agreement. She likewise suggested that inasmuch as the following day was a legal holiday, that they procure the services of a notary public with whom appellees were acquainted. This was done the following morning at the home of the notary public under the direction of Elves W. Metheny and Newton E. Wilson. The evidence was to the effect that Ruth Metheny was absent from this meeting because of a call upon some relative.

Subsequently thereto and on January 22, 1948, the city of Phoenix instituted an action in the superior court of Maricopa county to condemn the property in question together with a number of other parcels of land in that vicinity for use in the enlargement of the Phoenix airport. The land here involved was designated in that action as Parcel 13, and will be hereafter so designated in this opinion. Both appellants and appellees were made parties defendant in the condemnation proceedings. Appellants had been negotiating with the city in an attempt to agree upon the price to be paid by the city for the premises in question and immediately upon being served with a complaint, filed their answer in the condemnation proceedings. Appellees did not file their appearance in the action until March 22, 1948. In their answer they alleged they were the owners in fee simple of Parcel 13 and that appellants had no interest whatever therein.

On April 22, 1948, appellants filed a cross-complaint in the condemnation proceedings against appellees who were co-defendants in the action, setting up their lease and option to purchase and alleged that they had duly exercised their option and further alleged in substance that they had fully performed their part of their contract with appellees by paying to them the sum of $300 and notifying them of their election to exercise their option to purchase. They further alleged a tender of the balance of $4,700 to appellees; that said tender had at all times been kept alive and that the remainder of the funds due to appellees were then available at the Phoenix Title & Trust Company, to be paid to them upon their executing proper conveyance to the premises. Appellants (purchasers) further alleged in substance that relying upon their contract with appellees they had changed their position to their damage in giving up their plans to move elsewhere, by devoting their time in endeavoring to reach an agreement with the city on the price to be paid for the premises involved

and in employing counsel to defend them in the condemnation action brought by the city. They prayed that appellees (sellers) be required by the court to execute proper instruments of conveyance to appellants covering said premises and that they be required to accept $4,700 in full payment of the purchase price of said property.

At the close of appellants' case, upon motion of appellees for an instructed verdict, the trial court ordered the case be withdrawn from the jury and that appellants' cross-complaint against appellees be dismissed; that judgment be entered for appellees and against appellants. It is from this order and judgment, and from the order denying appellants' motion for a new trial that this appeal was taken.

Appellants assign as error (1) the ruling of the court on appellees' motion for an instructed verdict, and (2) the rejection, by the court, of evidence tending to show appellants' change of position to their damage as the result of their reliance upon the contract with appellees.

■■■■ We have reached the conclusion that the trial court was clearly in error in dismissing the cross-complaint at the close of appellants' evidence. We think there is sufficient in the record to warrant an equitable estoppel as against Ruth Metheny in that the evidence before the trial court, which must be considered as true in a determination of the motion for an instructed verdict, shows that she was the one, during the negotiations between the parties, who suggested the option contract and its terms. She also suggested that instead of having a lawyer draw the contract, a notary public with whom appellees were acquainted be asked to prepare it. The Wilsons were not acquainted with him. Upon being informed by Wilson that the city might purchase a 120-foot strip of land off of Parcel 13 she stated during the consummation of the verbal agreement that in the event the city should decide to purchase a portion of the premises that she would come to Phoenix upon receipt of information and sign the papers. It was then agreed that if the 120-foot strip of land was purchased by the city that the proceeds of sale should go to appellees as a part of the purchase price agreed to be paid by appellants. She at no time withdrew her authority to sell. She knew or as a reasonable person should have known appellants were trying to sell either the whole or a part of the premises. She accepted and enjoyed with her husband rentals of $300 paid during the year which she knew, under the terms of the written lease and option, were to be applied upon the purchase price of the premises in the event appellants exercised their option to purchase. Under the law the lease-option in question violates the statute of frauds yet appellees have recognized its validity although the lease and option to purchase are incorporated in the same written instrument.

Relying upon their verbal agreement with appellees, the Wilsons abandoned their

plans to move elsewhere and began negotiating with the city for the sale of the land in question and employed counsel to defend them in the action brought by the city to condemn this particular property. Appellants executed a note for $300 at the time the contract was executed, the due date of which was fixed at July 15, 1947, which was fully paid on October 10th to be applied as above pointed out.

The negotiations of appellant Newton E. Wilson with the city of Phoenix ultimately resulted in the sale to it of Parcel 13 for the sum of $8,000. Up to the present time appellees have not repudiated that sale but on the other hand have fully assented to it and are here now seeking to reap the benefit of appellants' efforts. Appellants employed counsel and immediately filed their answer in the condemnation proceedings brought by the city, thus incurring necessary expense in protecting their rights under the option contract. This all occurred during the life of the written lease and option in evidence in the case. Under these circumstances the evidence submitted by appellants must be considered most strongly against appellees. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201; Gallaway v. Smith, 70 Ariz. 364, 220 P.2d 857. We therefore hold that upon the record thus presented all of the elements of an equitable estoppel had been proved.

While counsel devoted their briefs exclusively to the question of estoppel, it is interesting to note that the cross-complaint filed by appellants against appellees contains all of the essential elements required in an action for specific performance. They alleged and proved complete performance of their part of the contract with appellees. They not only paid the $300 rental provided for in the contract but within the time provided therein they placed the remainder of the purchase price of $5,000, to wit, $4,700, with the Phoenix Title & Trust Company and notified appellees of its availability to them upon the execution by appellees of proper instruments of conveyance which, under the circumstances, was all the law required of them to effect a valid tender. 49 Am.Jur., Specific Performance, Sec. 146. It could not be expected, as counsel for appellees suggest, that appellants would be required to go to Stockton, California, and personally pay the money to appellees. The person who drafted the lease and option contract was chosen by appellees, and the contract was drawn under the direction of Elves W. Metheny. No place was provided in the contract where the money was to be paid. The Phoenix Title & Trust Company is a reputable business concern engaged in the performance of that character of business, hence the tender through it was sufficient.

It is the law in this state that either part or full performance of an oral contract takes it out of the statute of frauds. In the case of Condon v. Arizona Housing Corporation, 63 Ariz. 125, 160 P.2d 342,

we held that where a person goes into exclusive possession of real property under an oral contract of purchase (the purchase price in that case being $5,200 to $5,500) and pays the installments provided in the contract as they become due and makes improvements to the extent of $250 in building a fence and installing venetian blinds, such part performance takes the contract out of the statute of frauds, and that specific performance of such contract would be enforced, quoting from Latimer v. Hamill, 5 Ariz. 274, 52 P. 364. We reaffirmed this rule in Huish v. Lopez, 70 Ariz. 201, 218 P.2d 727. In that case we cited with approval Restatement of the Law, Contracts, Sec. 197, which reads: "Where acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor (a) makes valuable improvements on the land, or (b) takes possession thereof or *retains possession thereof,* existing at the time of the bargain, and also pays a portion or all of the purchase price, the purchaser or the vendor may specifically enforce the contract." (Emphasis supplied.)

As pointed out above, however, according to the evidence before the court at the time the motion for a directed verdict was ruled upon, appellants had fully performed their contract in the instant case by paying or tendering to appellees the full purchase price of the premises. This was done in strict compliance with the oral contract with both appellees on February 21, 1947, and with the written contract bearing the same date (but actually executed on February 22, 1947) and signed only by Elves W. Metheny and appellants.

This question has been before us many times and in the case of Sullivan v. Townsend, 30 Ariz. 63, 243 P. 913, we held that while the oral contract was within the statute of frauds, by full performance on the part of one of the contracting parties it was taken without the operation of the statute and in that case we required the other contracting party to specifically perform. To the same effect is Waddell v. White, 51 Ariz. 526, 78 P.2d 490; Norton v. Steinfeld, 36 Ariz. 536, 288 P. 3; and In re Gary's Estate, 69 Ariz. 228, 211 P. 2d 815. See also 18 Pacific Digest, Frauds, Statute of ☞139(1) etc.

We have considered the provisions of Section 71-409, A.C.A.1939, providing that: " * * * A conveyance or incumbrance of the community property shall not be valid unless executed and acknowledged by both the husband and wife * * *." While an option to purchase is not a conveyance it is an agreement to convey in the event the option is exercised and under the law is required to be in writing. Ruth Metheny joined with her husband in the verbal agreement giving appellants an option to purchase which was incorporated in the written lease signed only by her husband. She may not now be heard to say that she did not join her husband in the execution of said contract. Even in the ab-

sence of estoppel, when properly plead and proved equity will enforce specific performance of such a contract where the other contracting party has fully performed.

We therefore hold that the trial court erred in taking the case from the jury, for the reasons above stated. This position is further fortified upon the ground that appellants were entitled to specific performance of their contract with appellees for the reason that according to the evidence *then* before the trial court they had completely performed all and every part of said contract provided therein, by them to be performed.

Judgment reversed and cause remanded for a new trial in conformity with the principles herein set forth.

LA PRADE, J., being disqualified, the Honorable LEE GARRETT, Judge of the Superior Court of Pima County, was called to sit in his stead.